HOOD, Judge.
This suit was instituted by J. B. Pere, individually and as administrator of the estate of his minor daughter. He claims damages for personal injuries sustained by him and his daughter as the result of a motor vehicle collision. The defendants are Henry J. Seaux, American Employers *148 Insurance Company and Houston Contracting Company. The case was tried by jury with the result that a verdict was rendered in favor of plaintiff. A decree was signed by the trial court in accordance with that verdict, and defendants have appealed. Plaintiff has answered demanding damages for frivolous appeal.
The sole issue presented is whether the awards made by the trial court are excessive.
The accident occurred at a rural intersection in Vermilion Parish on August 21, 1969. Plaintiff’s automobile, being driven by him and occupied by his nine year old daughter, Shelly, collided with a pick-up truck being driven by defendant Seaux. American Employers Insurance Company was Seaux’s liability insurer, and Houston Contracting Company was his employer. Plaintiff and his daughter were injured as a result of that accident.
The jury found that the sole proximate cause of the accident was Seaux’s negligence, and that Seaux was performing the duties of his employment when the accident occurred. The judgment rendered by the trial court pursuant to the jury verdict awarded plaintiff, individually, the sum of $2,000 for his personal injuries and the additional sum of $2,500 as special damages. It awarded plaintiff, as administrator of the estate of his minor daughter, the sum of $2,500 for the personal injuries sustained by the child.
The liability of American Employers Insurance Company was limited to $6,000, and judgment was rendered in favor of Houston Contracting Company against Seaux and his insurer indemnifying Houston from any liability to plaintiff.

Injuries Sustained by J. B. Pere

Pere was 39 years of age when the accident occurred. He owns and operates a music store, and he also is a musician and a band leader. Prior to and after the accident he had engagements to perform with his band every Friday and Saturday nights, each such engagement lasting about four hours. He also has had a one hour television show every Sunday morning and a three hour night club engagement each Sunday afternoon.
As a result of the accident, Pere sustained injuries to his left elbow and to both of his knees. The elbow injury was of a very minor nature, and it completely cleared up within a day or two without any residual disability. He testified, however, that since the accident he has suffered from weak knees, with occasional swelling of the knees, and that the injury to his knees has handicapped him in the performance of his duties as a band leader and entertainer. He stated that because of the condition of his knees he has been unable to stand for long periods of time and that it has been necessary for him to hire someone to assist him in meeting his band engagements.
Pere was treated by Dr. Corbett Le-Bouef, a general practitioner, on the day the accident occurred and on three occasions thereafter. On his initial examination, Dr. LeBouef observed a redness and swelling around both knees, but he found no other objective signs of injury. He prescribed medication for pain and the application of heat compresses, and he encouraged plaintiff to continue with his usual activities. Plaintiff did continue with all of his activities with the band and with his music store, and he has never missed an engagement with his band or as an entertainer since the date of the accident. Dr. Le-Bouef testified that all of the swelling in the knees disappeared between August 26 and September 11, 1969, and that he discharged plaintiff on the last mentioned date as being able to perform all of his usual duties with the band. Plaintiff did not return to Dr. LeBouef for any further treatment after September 11, 1969, although the doctor did examine Pere again about six months later, on March 6, 1970. On the last mentioned date Dr. LeBouef *149 found no objective signs of injury or disability and nothing to substantiate plaintiff’s complaints.
Dr. William L. Zink, a general surgeon, examined plaintiff on March 17, 1970. He found no objective signs of injury, but based on plaintiff’s subjective complaints he concluded that Pere was suffering from a weakness of the knees, due to the fact that he had not exercised his knees adequately during the two or three week period immediately following the accident. He felt that plaintiff could continue to experience that weakness for a period of a year after the examination was made.
The jury obviously accepted Dr. Zink’s testimony to the effect that plaintiff has suffered from the injury over a prolonged period of time. We cannot say that the jury erred in doing so, and under those findings we think the award made to plaintiff for his personal injuries is not excessive. That award, therefore, will not be disturbed.

Injuries to Shelly Pere

Plaintiff’s daughter, Shelly, sustained injuries to her chest, face and head as a result of the accident. She was treated by Dr. Corbett LeBouef from the date of the accident until September 11, 1969. The injury to her chest was of a minor nature, and it subsided within three or four days after the accident. She, however, has continued to suffer from the facial injuries which she sustained.
Immediately after the accident occurred Dr. LeBouef found considerable swelling and discoloration on Shelly’s forehead and on the bridge of her nose. He prescribed medication and hot and co-id compresses. The following day the child had two black eyes, and a few days later she began complaining of nasal congestion. All of the discoloration around her face and eyes and all of the swelling disappeared by September 11, and on that date Dr. Le-Bouef discharged Shelly from any further treatment. He suggested, however, that she consult an eye, ear, nose and throat specialist, since he considered it possible that she had sustained a deviated septum as a result of the accident.
Shelly was examined and treated by Dr. Lee Joseph Sonnier, an eye, ear, nose and throat specialist, on March 24, and on March 31, 1970. He found that she did have a deviated septum to the left, but that she had adequate ventilation, that there was no irritation of the membranes in the nose, and that there was no evidence of nose bleeds. He testified that about 90 percent of all people have deviated septums and that most of them are traumatic in origin. Based on the history which was given to him, he concluded that Shelly had sustained a deviated septum as a result of the motor vehicle accident which occurred on August 21, 1969. He felt that Shelly’s condition would correct itself without surgery, since she was still growing, and for that reason he did not recommend any surgical procedure or any further treatment.
Shelly did not testify at the trial. Her father stated, however, that she has suffered occasionally from nose bleeds and difficulty in breathing since the accident occurred. She has no visible scars, however, and the accident has not interfered with her schooling and other activities. Dr. Sonnier stated that a deviated septum could make the child more susceptible to nose bleeds.
We conclude that plaintiff’s daughter sustained a deviated septum as a result of the accident, and that she has continued to suffer from nose bleeding and difficulty in breathing since that time. We feel that the award made for that injury is not excessive, and we will not disturb it.

Special Damages

The parties stipulated that the medical bills and the auto rental paid by plaintiff as a result of the accident amounted to the total sum of $339.03. The jury awarded plaintiff $2,500 as special dam *150 ages. Defendants contend that the award should be reduced to the amount of the stipulation.
Plaintiff argues that the jury, in awarding him $2,160.97 over and above the amount of stipulated special damages, intended either to compensate him for the additional expense which he incurred in hiring someone to assist him in performing with his band, or to compensate him for the cost of additional surgery which his daughter might need in the future. He contends, therefore, that the award should be affirmed.
Plaintiff testified that because of the weakened condition of his knees after the accident it was necessary for him to employ Duliss Landry to assist him in performing with his band. Landry had been a band leader, and he had had his own band for some time prior to the date of the above mentioned accident. He had worked for Pere as a member of his band on several occasions prior to the time plaintiff sustained the above mentioned injury. Landry dissolved his band shortly before this accident occurred, however, and he thus had become unemployed just prior to the time plaintiff sustained his injuries. He began working for plaintiff shortly after he dissolved his own orchestra, and he has been a regular member of plaintiff’s band continuously since that time.
Pere contends that it has been necessary for him to keep Landry as a member of the band continuously since the date of the accident, because plaintiff’s knees get weak before he completes a four hour playing engagement, and he needs to have Landry relieve him as the band leader and singer periodically during the dance or program. He also stated that Landry assists in handling the instruments and the trailer which is used in hauling those instruments.
Pere testified that he has paid Landry $5,600 in salaries since the date of the accident, and he contends that he is entitled to recover all of that salary from defendants. He reasons that he was awarded substantially less than the salary which was paid to Landry because the jury was influenced by the limited insurance coverage and Seaux’s impecunious circumstances. He contends that the award nevertheless should be affirmed since he is entitled to recover at least a part of the amount paid to Landry.
We are not convinced that plaintiff’s injuries were of such a nature that he was unable to perform his duties as a band leader or an entertainer. His treating physician, Dr. LeBouef, felt that he was able to perform those duties, and he recommended that he continue to do so. Dr. Zink, who examined plaintiff several months later, found no objective signs of injury or disability but based on the history which was given to him, he concluded that Pere did have a weakness of the knees, due to the fact that plaintiff had not used his knees for a period of two or three weeks following the accident. The evidence shows that plaintiff did perform with the band and that he did use his knees during that three week period of time. We have assumed that the jury accepted Dr. Zink’s opinion that plaintiff experiences weakness of the knees, but we do not interpret the doctor’s testimony as being to the effect that plaintiff has been unable to perform his duties as a band leader or entertainer after the accident occurred.
In our opinion the evidence fails to establish that plaintiff has been disabled from performing his duties as a band leader and entertainer since August 21,1969. We find, therefore, that it was not necessary for him to incur the expense of hiring Landry solely because of the injuries which he sustained on that date. We conclude that plaintiff is not entitled to recover any part of the salary which has been paid to Landry.
The evidence also fails to show that plaintiff’s daughter will need surgery to correct the nose injury which she sustained. Dr. Sonnier testified that he did not believe that such an operation would be necessary, although he concedes that it is pos *151 sible that some surgical procedure may be required. We interpret the evidence as showing, therefore, that it is improbable that such an expense will have to be incurred. Our conclusion is that the evidence does not justify an award of special damages consisting of the cost of such an operation.
The evidence supports an award of $339.-03 as special damages, but we find that it does not justify an award of special damages in excess of that amount.
For the reasons herein set out, the judgment appealed from is amended by reducing the award made to plaintiff, J. B. Pere, individually, from the sum of $4,500 to the sum of $2,339.03. In all other respects the judgment appealed from is affirmed. One-half the costs of this appeal are assessed to plaintiff, J. B. Pere, individually, and the remaining one-half of said costs are assessed to defendants, Henry J. Seaux and American Employers Insurance Company.
Amended and affirmed.